

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-22-2000

# Marinelli v. City of Erie

Precedential or Non-Precedential:

Docket 99-3027

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Marinelli v. City of Erie" (2000). *2000 Decisions.* Paper 134.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/134

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 22, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3027

ALFRED F. MARINELLI

v.

CITY OF ERIE, Pennsylvania,

      Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 94-cv-00039E)
District Judge: Honorable Maurice B. Cohill, Jr.

Argued: Wednesday, May 10, 2000

BEFORE: GREENBERG, McKEE and GARTH,
Circuit Judges

(Opinion Filed: June 22, 2000)

      Gregory A. Karle (Argued)
      Valerie J. Sprenkle
      626 State Street, Room 505
      Erie, PA 16501

      Attorneys for Appellant

      William Taggart (Argued)
      Frontier Place
      1359 West 6th Street
      Erie, PA 16505

      Attorney for Appellee

OPINION OF THE COURT

GARTH, Circuit Judge:

At the time of its passage, many rightfully hailed the Americans with Disabilities Act (ADA) as comprehensive civil rights legislation. See, e.g., Statement by President George Bush upon Signing S.933, 26 WEEKLY COMP. PRES. DOC. 1165 (July 30, 1990) (stating that the ADA "promises to open up all aspects of American life to individuals with disabilities"). Notwithstanding its comprehensive nature, however, the ADA's employment provisions specifically limit its protections to those individuals who can establish that they are indeed "disabled." Upon the ADA's promulgation, both the House and the Senate stipulated that Congress did not intend the ADA to protect those who suffered from "minor, trivial impairments"; to the contrary, an individual is only "disabled" under the auspices of the ADA if his "important life activities are restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people." H.R. REP. NO. 101-485, at 52 (1990); S. Rep. No. 101-116, at 23 (1989).

Alfred Marinelli ("Marinelli") brought the present action against the City of Erie ("the City") in February 1994. Marinelli essentially averred that the City violated the ADA when it failed to provide him with an accommodation that would allegedly have allowed him to return to his previous position as a member of the City's shift crew, notwithstanding the residual medical difficulties from which he suffered as a result of injuries sustained in an earlier truck accident. After Marinelli had submitted his evidence at trial, the City moved the District Court for judgment as a matter of law, arguing that Marinelli had not introduced sufficient evidence for a reasonable juror to conclude that he was "disabled" under the ADA. The District Court denied the motion, and the jury returned a verdict in favor of Marinelli. Because the record discloses that Marinelli only suffered from a "minor impairment" as opposed to the more substantial forms of "disability" Congress intended to protect through the ADA, we will vacate the judgment

2

entered in favor of Marinelli, and remand this matter to the District Court with instructions to enter judgment as a matter of law in favor of the City.

I

Marinelli was born and raised in Erie, Pennsylvania. He has received his high school diploma, and is now taking college-level classes in pursuit of his teacher certification. After his graduation from high school, Marinelli held several low-paying and low-skilled jobs including that of laborer, janitor, vending machine maintenance, and street meter reader.

Marinelli's employment with the City began on July 16, 1974, when he assumed a position as a laborer in the City's waste water treatment plant. Eventually, Marinelli transferred into the City's Streets Department as a laborer, a position that entailed many manual tasks, such as cutting grass, filling pot holes, and removing fallen leaves from the street. In 1978, Marinelli became a truck driver for the City, driving one or five ton trucks that, primarily during the winter months, were utilized to clear the snow from City streets, and apply salt to the streets in order to prevent icing. During the summer months, Marinelli was responsible for laying asphalt.

In 1989, Marinelli obtained a position with the City's "shift crew" that he possessed at all times relevant to the present appeal. Although Marinelli admitted that he never saw an actual job description for the "shift crew" position, he testified that the job consisted of a myriad of different tasks, including answering telephones, responding to emergency needs for labor, pumping gas for City vehicles, and snow plowing during the cold winter months of Northern Pennsylvania. Marinelli indicated that he and his colleagues divided this labor amongst themselves according to their varied preferences on a given day, and that it was not uncommon for one individual to work primarily on one task exclusively -- especially if that individual's ability to work was hampered by medical problems.

In the early morning hours of January 18, 1991, Marinelli was driving a snow plow on City streets when

3

another individual driving a pick-up truck lost control of his vehicle and collided with Marinelli. Although Marinelli did not seek immediate medical assistance, he alleges that he experienced such great pain within thirty-six hours that he visited the emergency room at his local hospital. The emergency room doctor told Marinelli simply to rest, and to seek a consultation with an orthopaedist. Dr. Rahner, the orthopaedist with whom Marinelli consulted, ordered an MRI and referred Marinelli to Dr. Duncombe, a neurologist. Dr. Duncombe conducted basic neurological tests and eventually suggested that Marinelli receive physical therapy as a form of treatment.

During this time, Marinelli had not returned to work and had sought worker's compensation benefits. At trial, Marinelli testified that he could not return to work because he had continuing residual pain in his arm. More specifically, Marinelli stated that "[t]he main factors were increasing pain with repetitive use of my left arm. The more I used my arm, the more pain I would get, the more I'd have to lay down till [sic] it would go away." App. at 70a. In more practical terms, Marinelli alleged that after the injury, he could no longer perform household chores, including scrubbing floors, washing walls, and shoveling the snow from the driveway. Marinelli also testified that as a result of his injuries, he remains unable either to operate a circular saw or to drive the snow plows that the City utilizes and requires typical shift crew members to employ. Particularly, Marinelli stated the following:

> I can do most of the shift crew work, if not all of it, depending on the weather. The only problem I would have doing the shift crew work would be when it's really cold or really wet, that's when my arm and neck kick up really bad.

App. at 97a.

When Marinelli attempted to return to his former position in October 1992, he asked the City to modify his workload to take into account his medical difficulties. Specifically, Marinelli requested the City to allow him to return to the shift crew position he held prior to his injury, except that he would primarily answer phones (and perform other

4

sedentary tasks) rather than perform all of the tasks for which a typical shift crew member would be responsible. Indeed, as stated earlier, Marinelli testified that the City had structured other shift crew members' work load in a like fashion in order to compensate for their particular impairments. The City refused to provide such an accommodation to Marinelli, and on January 3, 1993, Marinelli filed a charge against the City with the EEOC, claiming that the City had discriminated against him as a result of his injuries, and therefore in violation of the ADA.

After Marinelli filed his charge with the EEOC, the parties entered a stalemate period, with neither Marinelli nor the City taking much action to find Marinelli a suitable position with the City. By the summer of 1993, Marinelli began looking for alternative positions with other employers. Because this process did not yield any success for Marinelli, he allegedly became very depressed, and eventually sought the assistance of a state vocational counselor in December 1994. The Pennsylvania Office of Rehabilitation determined that Marinelli, having already obtained a number of college credits prior to his employment with the City, qualified for statefinancial aid in order to complete his college education. Marinelli pursued this course of action, and as of this date, has nearly completed his college studies, which will ultimately lead to his teaching certificate. He claims that it was for this reason that he rejected the City's offer of a stockroom position in February 1996.

Because the EEOC failed to act on Marinelli's petition within the required 180 days, Marinelli obtained a"right-to-sue" letter, and instituted the present action in the Western District of Pennsylvania on February 25, 1994. Subsequent to discovery, the parties proceeded to a jury trial on August 21, 1996. The District Court also bifurcated the issues for which both it and the jury were responsible. The jury was called on to decide whether the City had violated the provisions of the ADA and was therefore liable to Marinelli, and if so, the extent of Marinelli's non-economic compensatory damages. The remaining damage issues (back pay, reinstatement, front pay, prejudgment interest, and attorney fees), if the jury found the City liable, were reserved for the District Court's determination.

At trial, the City moved the District Court for judgment as a matter of law after both Marinelli and the City had completed entering their evidence, and the District Court denied both motions. On August 28, 1996, the jury returned a verdict against the City and assessed Marinelli's non-economic compensatory damages at $85,000. The City then renewed its motion for judgment as a matter of law and filed a motion for a new trial, both of which the District Court denied through an order dated October 28, 1996. The District Court granted the City's motion to certify such an order pursuant to Federal Rule of Civil Procedure 54(b), in order for the City to attempt an interlocutory appeal. This Court, however, dismissed the City's attempt for a lack of appellate jurisdiction through a memorandum opinionfiled on December 29, 1997.

After remand, the District Court conducted a bench trial concerning the damage issues that remained before the court as a result of the bifurcated trial structure. In an order and accompanying opinion filed on November 5, 1998, see Marinelli v. City of Erie, 25 F. Supp. 2d 674 (W.D. Pa. 1998), the District Court awarded Marinelli-- with interest -- back pay, a reimbursement for health insurance, and attorney fees for his counsel (both with respect to the present ADA claim and Marinelli's attempt to secure worker's compensation benefits). Including the jury's compensatory damage award, Marinelli was awarded $241,465.53 in damages through a final judgment order entered by the District Court on December 22, 1998. This timely appeal ensued.

II

The District Court exercised subject matter jurisdiction over Marinelli's ADA cause of action pursuant to 28 U.S.C. S 1331. Our appellate jurisdiction is based upon the final order doctrine of 28 U.S.C. S 1291.

III

We turn to the City's predominant argument -- that the District Court erred in denying its motion for judgment as a matter of law insofar as Marinelli failed to introduce

evidence sufficient to establish that he was "disabled" under the ADA. With respect to motions for judgment as a matter of law, Federal Rule of Civil Procedure 50(a)(1) states as follows:

> If during a trial by jury a party has been fully heard on an issue, and there is no legally sufficient basis for a reasonable jury to find for the party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

FED. R. CIV. P. 50(a)(1). We have previously held that "[a] motion for judgment as a matter of law under Federal Rule 50(a) `should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law.' " Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Macleary v. Hines , 817 F.2d 1081, 1083 (3d Cir. 1987)). Our review over the District Court's denial of the City's motion for judgment as a matter of law is plenary, and we apply an identical standard to that which the District Court was obligated to employ. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993).

IV

In order to state a cognizable cause of action under the ADA, a putative plaintiff must establish that he is a "qualified individual with a disability." See 42 U.S.C. S 12112(a); Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 806 (1999) (quoting 42 U.S.C. S 12111(8)). The statute defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. S 12111(8). Further, and of foremost importance for purposes of the present appeal, a "disability" is defined as either (1) "a physical or mental impairment that

7

substantially limits one or more of the major life activities of such [an] individual"; (2) "a record of such impairment"; or (3) "being regarded as having such an impairment." Id. at S 12102(2)(A)-(C). Both parties concede that Marinelli could not qualify as disabled under the two latter provisions listed above (i.e., either having a record of or being regarded as having an impairment); as a result, the present appeal turns exclusively on whether Marinelli introduced sufficient evidence for any reasonable juror to conclude that he suffered from "a physical or mental impairment that substantially limit[ed] one or more [of his] major life activities."

A

The EEOC regulations, in pertinent part, define "impairment" as follows:

> Any physiological disorder, or condition . . . or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory . . . cardiovascular, reproductive . . . .

29 C.F.R. S 1630.2(h)(1) (1999). Further, the EEOC's interpretative guidance with respect to the ADA distinguishes true impairments from mere physical characteristics, such as eye and hair color, pregnancy, or personality traits. Id. App. S 1630.2(h). Although Marinelli's difficulties do not appear to arise from a "disorder" to the extent that the term is synonymous with "disease," his snow plow accident left him with residual pain that is properly understood as a "condition" that affects his musculoskeletal system. See, e.g., Plant v. Morton Int'l, Inc., No. 99-3445, 2000 WL 572458, at *7 (6th Cir. May 12, 2000) (holding a "back strain" to qualify as an impairment for ADA purposes). Indeed, the City, by failing to argue to the contrary, appears to concede that Marinelli suffered from an "impairment" within the purview of the ADA.

The City does argue, however, that Marinelli's ADA claim should fail because he has not introduced any medical evidence to support his allegations of impairment. We have

8

yet to confront this issue directly.[1] The most oft-cited court
of appeals discussion of the issue is that of the First Circuit
in Katz v. City Metal Co., 87 F.3d 26 (1st Cir. 1996). In
Katz, the court held that

> [t]here is certainly no general rule that medical
> testimony is always necessary to establish disability.
> Some long-term impairments would be obvious to a
> jury (e.g., a missing arm) and it is certainly within the
> realm of possibility that a plaintiff himself in a
> disabilities case might offer a description of treatment
> and symptoms over a substantial period that would
> [allow] the jury [to] determine that[the plaintiff] did
> suffer from a disability.

Id. at 32. In other words, the necessity of medical testimony
turns on the extent to which the alleged impairment is
within the comprehension of a jury that does not possess a
command of medical or otherwise scientific knowledge.
Building upon this notion, other courts have held similarly,
and have added that a lack of medical testimony should be
a factor cutting against a plaintiff 's claim of disability. See,
e.g., United States v. City of Denver, 49 F. Supp. 2d 1233
(D. Colo. 1999) (holding that a lack of physician testimony
is but one factor in determining whether a plaintiff has met
his burden to establish disability); Colwell v. Suffolk County
Police Dep't, 967 F. Supp. 1419, 1425-26 (E.D.N.Y. 1997)

_____

1. In Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 308 n.3 (3d Cir.
1997), which presented claims of disability discrimination under both
the ADA and the Pennsylvania Human Relations Act ("PHRA"), we
restated the fact that the New Jersey Supreme Court had held, in the
context of evaluating a claim under the New Jersey Law Against
Discrimination ("LAD"), that " `expert medical testimony is required to
establish the fact of the employee's [handicap].' " See id. at 308 n. 3
(quoting Gaul v. AT&T, Inc., 955 F. Supp. 346 (D.N.J. 1997), aff 'd sub
nom on other grounds Gaul v. Lucent Tech., Inc., 134 F.3d 576 (3d Cir.
1998)) (quoting in turn Clowes v. Terminix Int'l, Inc., 538 A.2d 794, 806
(N.J. 1988)). Clearly our observation in Taylor did not pertain to the
ADA. See Clowes, 538 A.2d at 805-06 (holding that the plaintiff, who
claimed that he suffered from alcoholism, failed to establish that he was
"handicapped" under LAD because there was no testimony in the record
from a treating or examining physician demonstrating that the plaintiff
had been diagnosed as an alcoholic).

(holding that "nothing in the ADA compels the conclusion that medical evidence is necessary to establish disability status"); rev'd on other grounds, 158 F.3d 635 (2d Cir. 1998). Cf. Schwimmer v. Kaladjian, 988 F. Supp. 631, 640 (S.D.N.Y. 1997) (holding, in a section 1983 case, that medical testimony is more persuasive than the witness's own recapitulation of his injuries).2

With respect to the instant matter, Marinelli's alleged medical difficulties (i.e., arm and neck pain) are among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury. As such, Marinelli's failure to present medical evidence of his impairment, in and of itself, does not warrant judgment as a matter of law in favor of the City. Nevertheless, given the other weaknesses in Marinelli's disability claim, see text infra, the fact that Marinelli did not produce a shred of medical evidence to substantiate his allegations of impairment argues in favor of the City's position.

B

Although Marinelli introduced evidence sufficient for a reasonable juror to conclude that he suffered an impairment, as stated above, he must also establish that such an impairment "significantly limited one or more major life activity." The EEOC's interpretive guidance indicates that "major life activities" "are those basic activities that the average person in the general population can perform with little or no difficulty." 29 C.F.R. App. S 1630.2(i) (1999). Operating from this premise, the actual regulations list "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" as examples of major life activities.

_____

2. Although this view is certainly that which most comports with the terms of the ADA and with notions of common sense, it is not without its critics. See, e.g., Poldermann v. Northwest Airlines, Inc., 40 F. Supp. 2d 456, 463 (N.D. Ohio 1999) (holding that "plaintiff 's testimony as to her ability to work with the public, without supporting medical testimony, is not sufficient to establish her prima facie case under the ADA" (citing Douglas v. Victor Capital Grp. , 21 F. Supp. 2d 379, 392 (S.D.N.Y. 1998))).

Id. S 1630.2(i). Indeed, the Supreme Court recently held that the ability to reproduce qualified as a major life activity. See Bragdon v. Abbott, 524 U.S. 624, 639-40 (1998).

The impairment must not only affect the way in which the plaintiff engages in such an activity, however. To the contrary, a plaintiff must establish that the impairment substantially limits the ability to engage in the activity, and on this score, the regulations are rather specific. Pursuant to 29 C.F.R. S 1630.2(j), the EEOC defines "substantially limits" as leaving the plaintiff (1) "unable to perform a major life activity that the average person in the general population can perform; or" (2) "significantly restricted as to the condition, manner, or duration under which an individual [the plaintiff] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. S 1630.2(j)(1) (i)-(ii) (1999).3

Three relatively recent opinions from this court assist in giving meaning to these rather abstruse concepts. In Taylor v. Pathmark Stores, Inc., 177 F.3d 180 (3d Cir. 1999), a supermarket cashier who had undergone arthroscopic surgery for an ankle problem and walked with crutches brought an ADA claim against his employer. See id. at 183. Taylor, the cashier, indicated that he could walk or stand for fifty minutes without rest. See id. at 186. Finding that Taylor was no different than an average person with respect to walking or standing during this fifty minute stretch, and as such, could "carry out most regular activities that require standing and walking," we held that Taylor was not disabled within the purview of the ADA. Id. at 186. In so holding, we stated that the "purpose of the ADA would be

_____

3. The EEOC's regulations also provide that "[t]he following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of
the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. S 1630.2(j)(2)(i)-(iii).

11

undermined if protection could be claimed by those whose relative severity of impairment was widely shared." Id.

In Kelly v. Drexel University, 94 F.3d 102 (3d Cir. 1996), the plaintiff had suffered a hip fracture, was left with a rather noticeable limp, and as a result, claimed that he was "disabled" under the ADA because he could not walk more than a mile without stopping. See id. at 103-04. Holding that "comparatively moderate restrictions on the ability to walk are not disabilities," we denied the plaintiff 's claim of disability, and affirmed the District Court's grant of summary judgment to the defendant. Id. at 106; see also Penchinson v. Stroh Brewery Co., 932 F. Supp. 671, 674 (E.D. Pa. 1996) (holding that an individual who could not walk at full pace and had to use both feet to walk up the stairs was not disabled).

Finally, in Taylor v. Phoenixville Sch. Dist. , 184 F.3d 296 (3d Cir. 1999) (see note 1 supra), the plaintiff argued that her bipolar and manic depressive disorders qualified her for disability status under the ADA. See id. at 302. Although the "episodes" from which plaintiff suffered as a result of her disorders were rather severe, the panel acknowledged that such problems were, for the most part, controlled by her medication.4 See id. at 308. Nonetheless, the medication that the plaintiff took to ease her symptoms produced many side effects that from time-to-time would leave the plaintiff severely nauseated with an inability to concentrate. See id. Because, in our view, these "repeated flare-ups" could "have a cumulative weight that wears down a person's resolve and continually breaks apart longer-term projects," we held the plaintiff to be disabled under the ADA. Id. at 309.

One may glean two general propositions from these opinions: (1) courts must adjudicate ADA claims on a case-by-case basis; and (2) we have held only extremely limiting

_____

4. In two 1998 term decisions, the Supreme Court held that a court must look at an ADA plaintiff 's impairment after corrective measures are taken -- e.g., medication, eyeglasses -- in order to determine whether such an impairment was substantially limiting to the plaintiff 's major life activities. See Albertson's, Inc. v. Kirkinburg, 119 S. Ct. 2162, 2169 (1999); Sutton v. United Air Lines, Inc., 119 S. Ct. 2139, 2146 (1999).

disabilities -- in either the short or long-term-- to qualify for protected status under the ADA. Having said this, we recognize that Marinelli argues that his impairment substantially limits his ability to engage in a major life activity in three ways: (1) he is unable to perform household chores, such as cleaning his floors; (2) he is unable to lift objects on greater than a sedentary scale; and (3) he is unable to operate the type of snow plow utilized by the City, and is thus substantially limited from working.5

i.

With respect to Marinelli's first argument, courts have generally held that "cleaning," or, more generally, "doing housework," does not qualify as a major life activity. Although the EEOC regulations list "caring for oneself " as a major life activity, courts interpreting this regulation have held that such relates only to basic activities such as washing dishes and picking up trash. See Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995); see also Lockett v. Wal-Mart Stores, Inc., No. 99 0247-CB-C, 2000 WL 284295, at *8 (S.D. Ala. Mar. 8, 2000); Richards v. American Axle & Man., Inc., 84 F. Supp. 2d 862, 870 (E.D. Mich. 2000). In other words, "cleaning" is only considered a major life activity to the extent that such an activity is necessary for one to live in a healthy or sanitary environment. On the other hand, merely "performing housework other than basic chores" does not qualify as a major life activity. Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998); see also Weber v. Strippit, Inc., 186 F.3d 907, 914 (8th Cir. 1999), cert. denied, 120 S. Ct. 794 (2000) (holding that shoveling snow, gardening, and mowing the lawn were not major life activities).

With respect to his ability to clean, Marinelli testified as follows:

        Everything changed. I used to scrub the floors in the
_____

5. The EEOC's interpretive guidance stipulates that we should not inquire into whether an individual is substantially limited in the major life activity of working unless the individual "is not substantially limited
with respect to any other major life activity." 29 C.F.R. App. S 1630.2(j).

13

> house, wash the walls, do the dishes, clean the counters, do the housework. . . . After the injury, I couldn't do most of that. . . . Like if I tried to wash a floor, I'm right-handed. I can't use my left hand. And even when you're using your right hand, if I put weight on the left hand, I'm collapsing. It was ridiculous.

App. at 71a (emphasis added). The only task within Marinelli's discussion with respect to cleaning that courts have even considered a major life activity is washing dishes. Even though Marinelli casually mentioned such a task during his testimony, he failed to indicate how his medical difficulties affected his ability to wash the dishes. Further, Marinelli stated that his injury only limited his ability to do most of the tasks listed above. It is possible, therefore, without further explanation, that Marinelli continued to be able to wash dishes after the injury. The only task that Marinelli discussed in detail is that of washing thefloor, which, as stated above, is not subsumed within the activity of "caring for oneself." At the very least, Marinelli's cursory statement concerning household activities is not sufficient to survive judgment as a matter of law. We therefore hold Marinelli's inability to perform certain household chores does not render him disabled.

ii.

Marinelli argues next that his inability to lift articles at more than a sedentary level establishes that he is substantially limited in a major life activity. To be sure, as stated above, the EEOC regulations indicate that"lifting" is a major life activity. Unlike his assertion concerning housework, therefore, our present inquiry is geared towards whether Marinelli's injury substantially limits his ability to lift. The only evidence introduced at trial related to Marinelli's lifting difficulties is found within the deposition of Dr. Fred Cohen, who examined Marinelli on December 19, 1995, after the instant action had been filed, and at the behest of the City. Cohen testified that Marinelli had informed him that Marinelli was unable to do any"heavy work greater than ten pounds." App. at 484a. The deposition transcript indicates that Marinelli informed Cohen of this difficulty -- and the specificity of his weight

14

restriction -- without any supporting materials; in other words, Marinelli simply estimated the weight that he believed he could lift.

Initially, we note that the City, not Marinelli, introduced Dr. Cohen's deposition testimony into the record at trial. Because, as stated earlier, Marinelli bears the burden of establishing that he is disabled within the meaning of the ADA, he must affirmatively introduce evidence to this end in order to survive a motion for judgment as a matter of law. Indeed, the City appeals not only the District Court's denial of the motion for judgment as a matter of law it submitted after all the evidence had been introduced; the City also argues that the District Court erred in denying the motion for judgment as a matter of law it submitted subsequent to the close of the plaintiff 's  case-in-chief (i.e., before Dr. Cohen's testimony had been introduced). As a result, Marinelli cannot rely upon Dr. Cohen's deposition testimony in his effort to avoid judgment as a matter of law.

Even if we were to consider such evidence, however, courts have rejected claims of disability based on an inability to lift similar weights to those with which Marinelli alleges to experience difficulty. For instance, in Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346 (4th Cir. 1996), the Fourth Circuit held a twenty-five pound lifting restriction not significantly limiting. See id. at 349. The Fifth and Eighth Circuits have held similarly. See Ray v. Glidden Co., 85 F.3d 227, 229 (5th Cir. 1996); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996); see also Thompson v. Holy Family Hosp. , 121 F.3d 537 (9th Cir. 1997) (per curiam) (holding that a woman that could only lift twenty-five pounds consistently,fifty pounds twice a day, and one hundred pounds once a day was not disabled within the meaning of the ADA). As Marinelli's ten-pound limitation is not far removed from the twenty-five pound restrictions our sister circuits have held not to render one disabled under the ADA, we would also hold that Marinelli's lifting restriction does not render him sufficiently different from the general population such that he is substantially limited in his ability to lift.

15

iii.

Marinelli finally argues that his physical impairment significantly limits his ability to work, which he properly classifies as a major life activity. See 29 C.F.R. SS 1630.2(i); 1630.2(i)(3) (1999). The EEOC has stipulated that in order for one to be properly characterized as substantially limited from working as required by the ADA, an individual must be unable "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Id. S 1630.2(j)(3)(i). To the contrary, the mere "inability to perform a single, particular job" will not suffice to establish a substantial limitation with respect to working. Id. The EEOC's interpretive guidance expands on this point, stating that an individual that "is unable to perform a particular job for one employer, or . . . is unable to perform a specialized job" is not substantially limited in his ability to work. Id. App. S 1630.2(j).6  Both the EEOC and the courts therefore have required a plaintiff to show that his or her impairment prevents them from engaging in a category of jobs.

Marinelli argues that the restrictions placed upon his work by Dr. Cohen -- that he was only capable of a "medium range of exertion" -- limits his ability to perform "all super heavy and heavy jobs and all medium, light and sedentary positions requiring bilateral grip or repetitive use of the left extremity." Brief of Appellee, at 19. 7 This assertion, however, only lists the restrictions that a

_____

6. In this respect, the interpretive guidance offers a rather helpful example:

> [A]n individual who cannot be a commercial airline pilot because of a minor vision impairment, but who can be a commercial airline co-pilot or a pilot for a courier service, would not be substantially limited in the major life activity of working.

29 C.F.R. App. S 1630.2(j) (1999).

7. We note again that Marinelli did not offer Dr. Cohen's deposition testimony as a part of his case-in-chief, and as such, is not entitled to utilize the same to avoid judgment as a matter of law. Because, as above, Dr. Cohen's testimony cannot assist Marinelli in any event, we will discuss the merits of Marinelli's argument.

16

physician has placed on Marinelli's work; it does not indicate, as stated above, the class of jobs (e.g., meatpacker, pilot, chef) from which he is disqualified as a result of his impairment (and resulting restrictions).

Further, courts have held such general averments insufficient to establish disability status under the ADA. In Broussard v. University of California, 192 F.3d 1252 (9th Cir. 1999), the plaintiff introduced a vocational rehabilitation expert's opinion that she could only work at the "sedentary to light" categories of workload. See id. at 1257. The Ninth Circuit held that because an expert's opinion only took "categories of jobs" into account, such evidence could not serve to defeat a motion for summary judgment with respect to whether the plaintiff was sufficiently limited from working. See id. at 1258 (emphasis added) (citing Thompson v. Holy Family Hospital , 121 F.3d 537 (9th Cir. 1997) (per curiam)). Likewise, in McKay v. Toyota Motor Mfg., U.S.A., Inc., 110 F.3d 369 (6th Cir. 1997), the Sixth Circuit held that a plaintiff 's carpel tunnel syndrome, which restricted her from performing medium to heavy work (i.e., any position requiring "repetitive motion or frequent lifting of more than ten pounds") was insufficient to establish that the impairment disqualified her from a broad range of jobs. Id. at 372–73. Finally, in Colwell v. Suffolk County Police Dep't, 158 F.3d 635 (2d Cir. 1998), the Second Circuit held that testimony suggesting that a plaintiff could only perform light or sedentary work merely established that the individual was disqualified from a "narrow range of jobs," and therefore was insufficient to establish that the plaintiff was disabled within the meaning of the ADA. See id. at 644–45. As a result, Marinelli cannot avoid judgment as a matter of law simply by pointing to the restrictions that Dr. Cohen placed upon his work.

Marinelli also testified that he could not operate the large snow plows utilized by the City. More specifically, Marinelli stated the following:

> [I]t is my position that I can't drive a large snow plow. . . . [Because] [w]hen you're driving a large truck like that, you're going in and out of traffic, you do a lot of scanning with your mirrors, you do all the driving with your left hand, your right hand is always on controls.

17

App. at 96a. With respect to the other tasks required of shift crew members, as we reported earlier, Marinelli indicated that he would have little difficulty:

> I can do most of the shift crew work, if not all of it, depending on the weather. The only problem I would have doing that shift crew work would be when it's really cold or really wet, that's when my arm and neck kick up really bad.

App. at 97a. As a result, Marinelli's assertion must be limited to his ability to drive the more sophisticated snow plows used by the City.

This argument, however, is far removed from being unable to perform a "broad range of jobs" as the EEOC regulations require. To the contrary, Marinelli's claim resembles the example provided by the EEOC's interpretive guidance; i.e., a pilot with an eye impairment that disqualifies him from flying commercial aircraft, but does not forbid him from serving as a co-pilot, or as a pilot on other aircraft. See 29 C.F.R. App. S1630.2(j) (1999). As the interpretive guidance advises, an individual faced with such a scenario is not disabled under the ADA.

On this score, a pair of Seventh Circuit decisions are quite apposite to the present appeal. In Best v. Shell Oil Co., 107 F.3d 544 (7th Cir. 1997), the plaintiff had a knee impairment that made it difficult to drive most of the trucks in defendant Shell's fleet.  See id. at 545. Although the court believed that the plaintiff had presented sufficient evidence to survive summary judgment, it framed the question posed to the district court on remand as whether the plaintiff 's knee injury prevented him from driving most trucks in general, or only those trucks that comprised Shell's fleet. See id. at 548-49. If, as is the case with Marinelli, the plaintiff 's impairment only precluded him from driving the particular trucks Shell used, but did not prevent him from driving the majority of trucks utilized in the industry, he would not be disabled. See id.

Further, in Baulos v. Roadway Express, Inc., 139 F.3d 1147 (7th Cir. 1998), a plaintiff who suffered from kidney troubles that prevented him from sleeping inside a truck claimed that he was substantially limited in his ability to

18

work as a truck driver. See id. The evidence, however, showed that the plaintiff 's impairment only disqualified him from trucking positions that involved overnight travel, and therefore, the plaintiff could perform the majority of other trucking positions. See id. at 1153. The Baulos court thus held that the plaintiff was not disabled. See id.; see also Thompson v. Dot Foods, Inc., 5 F. Supp. 2d 622, 626 (C.D. Ill. 1998) (holding plaintiff truck driver to be substantially limited in the major life activity of working in case in which plaintiff had submitted evidence establishing that he could not perform any trucking position involving road travel).

In the present appeal, the evidence -- viewed in the light most favorable to Marinelli -- indicates only that Marinelli's injury precluded him from driving the type of snow plow utilized by the City. He has not introduced any evidence to suggest that his injury would hamper an attempt to obtain a position driving any other truck utilized by any employer -- including the City. Indeed, the evidence is quite to the contrary, as Marinelli testified that he obtained a commercial driver's license shortly after his accident. App. at 115a. We therefore hold that Marinelli did not introduce evidence sufficient for a reasonable juror to conclude that he was substantially limited in the major life activity of working.8

_____

8. Marinelli also attempts to equate his successful attempt to receive worker's compensation benefits with being disabled pursuant to the ADA. In Pennsylvania, worker's compensation benefits are only paid to those who have "lost earning capacity." Fink v. Workmen's Compensation Appeal Bd., 678 A.2d 853, 857 (Pa. Commw. Ct. 1996). Because an ADA plaintiff must establish that he or she can perform the "essential functions" of the job he seeks, see 42 U.S.C. S 12111(8), it would appear that a finding of worker's compensation benefits would contradict -- not support -- a claim of disability under the ADA. Although the Supreme Court has held that plaintiffs ought not be entirely estopped from seeking ADA relief merely because they were the recipient of worker's compensation (or social security) benefits, see Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 807 (1999), obtaining worker's compensation benefits certainly does not mandate a finding of disability under the ADA.

19

iv.

Marinelli failed to present evidence at trial that would substantiate his claim that, as required by the ADA, he was substantially limited in a major life activity. The District Court thus erred in denying the City's initial motion for judgment as a matter of law.

V

Congress did not intend for the ADA to protect all individuals who suffer from medical difficulties; rather, Congress desired to shield from adverse employment actions those individuals whose medical troubles prevented them from engaging in significant daily activities. Because the record does not reveal that Marinelli submitted evidence that would allow a reasonable juror to conclude that he was a member of the latter class of individuals, we hold that the District Court erred in denying the City's motion for judgment as a matter of law.9 We will therefore vacate the final judgment order awarding Marinelli $241,465.53, and entered by the District Court on December 22, 1998, and will further remand this matter to the District Court with the direction to enter judgment as a matter of law in favor of the City.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

9. The City raised other issues in this appeal regarding the District Court's various rulings in the present matter; namely, that Marinelli did not adequately assist the City in formulating a proper accommodation that would allow him to return to work, that the verdict levied against the City was "shockingly excessive," and that the District Court erred in its calculation of attorneys' fees. Insofar as we hold that Marinelli has failed to establish that he is disabled within the purview of the ADA, we need not address these additional issues.

20