

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-2007

# Ashton v. AT&T

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1610

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ashton v. AT&T" (2007). *2007 Decisions.* Paper 1563.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1563

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

: **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-1610
_____

JANE ASHTON,

Appellant

v.

AMERICAN TELEPHONE AND
TELEGRAPH COMPANY

_____

On Appeal From the United States District Court
for the District of New Jersey
(D.C. Civ. No. 03-cv-03158)
District Judge: Honorable Dennis M. Cavanaugh

_____

Submitted Under Third Circuit LAR 34.1(a)
February 21, 2007
Before: FISHER, ALDISERT AND WEIS, <u>CIRCUIT JUDGES</u>

(Filed: February 27, 2007)
_____

OPINION
_____

PER CURIAM

        Jane Ashton appeals from the order of the United States District Court for the

District of New Jersey granting summary judgment on her discrimination claims brought

pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117,

the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654, the New

Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-5(e), and the Jury Service

Statute, N.J.S.A. 2B:20-17.

## I.

Ashton worked in various capacities at AT&T beginning in 1997. In 2000, she became a field service manager handling big revenue producing accounts such as PSE&G.[1] Reviews of her job performance was mixed. In 2001, she received salary increases, two awards (for quality service and for the number of revenue generating orders she serviced), and at least one bonus for her work. In February 2002, however, she began to experience problems. A departing supervisor chastised her for revealing to PSE&G that they were not her sole account and informed her that she was performing "below target," even though her evaluation reflected an "on target" rating. When Ashton was called to serve on a grand jury one day a week from March to June, 2002, her new supervisor, Patricia Jackson, voiced her displeasure, screaming at Ashton on at least one occasion about jury duty. On another occasion, Jackson told Ashton that she thought the amount of time required for grand jury duty was "ridiculous," and blamed Ashton for not getting out of it. Jackson warned Ashton that she could be her best friend or her worst enemy. Based on these remarks from her supervisor, Ashton believed that Jackson was blaming her personally for dutifully serving on the grand jury.

About two weeks before she completed jury duty in June 2002, Ashton applied for

---

[1] Ashton's title is also referred to as "Customer Service Manager." Ashton's duties were the same regardless of her title.

temporary disability for acute stress disorder and generalized anxiety. The reporting physicians indicated that Ashton's symptoms included poor concentration, uncontrolled shaking, crying, and increased insomnia. She was put on medication and started seeing a therapist twice a week. She continued on temporary disability until August 4, 2002. Through an arrangement that Jackson approved, Ashton returned to work by teleworking full-time from home for the month of August. On her own initiative, Jackson gave Ashton a lighter workload. Ashton had no problem completing the work assignments at home and requested more work to do.

In early September, on her doctor's recommendation that she continue the current work arrangement, Ashton e-mailed Jackson, requesting permission to telework for the month of September. Jackson told Ashton that she could not accommodate the request and warned Ashton that if she did not come to work in early September, Jackson would consider Ashton's absence as "job abandonment." Ashton experienced increased panic attacks and anxiety because she knew that she was unprepared emotionally to return to the stressful work environment and because she feared losing her job. She went back on temporary disability for the month of September. Down one team member, Jackson asked her supervisor, Michael Klem, if she could bring another AT&T employee onto her team. Klem approved, noting that Ashton would be moving off Jackson's team in sixty days in any event, because her current job "doesn't fit her skills.[2] [3]"

---

[2] While Ashton was out on disability leave in the early fall, 2002, AT&T embarked on a major restructuring of the post sales resources unit of the sales department. Under the

3

In mid-October, Ashton informed her new supervisor, Carol Dalina, of her plan to take previously approved vacation from October 28 through November 1and to return to work on November 4. A few days later, ATT&T's disability insurance carrier, MetLife, denied disability payments for the month of September. Based on MetLife's report, Dalina told Ashton that she must return to work on October 24. Ashton said that she was afraid to drive the fifty mile round trip because of the medication she was taking and because she might experience a panic attack while driving. Dalina asked Ashton to provide medical documentation of her inability to drive to work. Instead, Ashton gave Dalina notes from her therapist and doctor recommending that she continue to work at home. Dalina allowed Ashton to telecommute on October 24. Ashton did not appear for work on October 25.

On October 27, Michael Klem e-mailed Ashton, telling her to report to the Morristown, New Jersey office when she returned to work from vacation on November 4. Ashton responded that her therapist and doctor recommended that she continue to telework. Klem denied Ashton permission to telework any further and gave her two alternatives. She could come to the office to discuss any other reasonable

new structure, effective October 7, 2002, Ashton was assigned to work on the second tier of accounts, not the top revenue based accounts that she had been working on before, and she was assigned to a different supervisor, Carol Dalina.

[3] AT&T asserts that Ashton performed poorly on the PSE&E and Dendrite accounts. Ashton says that her supervisors did not talk to her about her handling of the PSE&G and Dendrite accounts and did not warn her of any other poor performance issues. The disputed facts play no part in our decision here.

accommodation that she might suggest or that they might arrive at together. In the alternative, she could take sixty days paid leave to seek a position elsewhere in AT&T; if she was unsuccessful at the end of sixty days, she would be terminated from the payroll. Ashton took sixty days of paid leave. When Ashton failed to find another AT&T position, AT&T terminated her employment on January 3, 2003.

After exhausting her administrative remedies, Ashton filed a complaint in 2003, which she later amended, [4] alleging that she was disabled by generalized anxiety, agoraphobia, and depression, which substantially limited the major life activity of thinking. She claimed that AT&T discriminated against her on account of her disability when they effectively terminated her employment in January 2003 and failed to provide reasonable accommodation by denying her the option of teleworking full-time for the months of September and October 2002. Ashton asserted that the type of work she did could be performed easily at home, and that other employees, including supervisors, worked from home all of the time. She also claimed that her supervisors retaliated against her in September and October for serving on a grand jury in the spring, 2002, and for taking FMLA leave in the fall, 2002. She sought back wages and damages.

AT&T moved for summary judgment, contending that Ashton was not disabled under the ADA because she failed to provide sufficient evidence that she was impaired and because the alleged impairment was temporary and did not substantially limit a major

---

[4] Ashton retained counsel in the district court after she submitted the amended complaint.

life activity.  AT&T asserted that Ashton failed to establish that she was handicapped under the NJLAD because she did not submit expert medical evidence to show the existence of a mental impairment.  AT&T also argued that Ashton's reasonable accommodation claim failed because teleworking was not a "reasonable accommodation" and because she refused to discuss in good faith accommodations other than teleworking. As for the FMLA retaliation claim, AT&T contended that Ashton failed to provide any evidence establishing that the denial of her telework request constituted an "adverse action" for FMLA purposes or that her request was denied because she had taken medical leave protected under the FMLA.  AT&T alleged that Ashton's claim of retaliation for taking jury duty was time-barred under New Jersey's Jury Service Statute.

Ashton responded, claiming that AT&T failed to provide reasonable accommodation under the NJLAD and ADA when it denied Ashton's request for extended teleworking and that AT&T retaliated against her for taking FMLA leave by denying her permission to telework in September and October and by terminating her in January 2003.  She also argued that AT&T failed to inform her of her right to take FMLA leave in September, 2002, in violation of the FMLA.

The District Court granted summary judgment in AT&T's favor on all claims.  The District Court held that the jury duty retaliation claim was time-barred and denied the NJLAD, ADA, and FMLA claims for lack of sufficient medical evidence.  The District Court ruled that the NJLAD claims failed because Ashton did not present expert medical testimony establishing a non-physical "handicap" as required under the NJLAD.  The

6

District Court determined that Ashton had to provide expert medical evidence in order to show a "disability" under the ADA because her impairments would not be readily apparent to the average juror. The District Court denied the FMLA claim because Ashton failed to provide medical evidence sufficient to show that she was entitled to FMLA leave for medical reasons. Alternatively, the District Court ruled that, even if Ashton availed herself of a protected right under the FMLA, no causal connection existed between her disability leave in September and October, 2002, and her eventual termination in January 2003, which was triggered by Ashton's failure to obtain another AT&T position within sixty days. The District Court also held that AT&T's denial of the teleworking privilege did not constitute an "adverse employment action" because it did not result in a significant change in Ashton's employment status, duties, salary, or benefits. Ashton filed a motion for reconsideration, which the District Court denied. Ashton then filed this timely appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's grant of summary judgment, and we apply the same standard that the District Court should have applied. See Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 163 (3d Cir. 2006)(citation omitted). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Saldana v. KMart Corp., 260 F.3d 228, 232 (3d Cir.

7

2001); FED. R. CIV. P. 56(c).  We will affirm.  For the reasons set forth by the District

Court, we agree that the jury service retaliation claim is time-barred and that Ashton lacks

the required expert medical evidence to support a finding of "disability" under the

NJLAD.[5]  Viscik v. Fowler Equipment Co., 800 A.2d 826, 834 (N.J. 2002).

Under the ADA, unlike the NJLAD, there is no general rule that medical evidence

is always necessary to establish a disability.  Marinelli v. City of Erie, 216 F.3d 354, 360

(3d Cir. 2000).  We need not decide whether expert medical evidence is required in this

case.  Assuming in Ashton's favor that the medical record alone establishes an

impairment under the ADA, there is nothing in this record indicating that her impairment

substantially limited the major life activity of thinking.  Under the ADA, Ashton is

"disabled"only if her impairment substantially limits a major life activity.  An impairment

is "substantially limiting" if the person "is significantly restricted as to the condition(s),

manner, and duration under which she can perform a major life activity as compared to

the condition(s), manner, and duration under which an average person in the general

population can perform the same major life activity."  29 C.F.R. § 1630.2(j)(1).  Factors

to consider in evaluating whether an individual is substantially limited in a major life

activity are (i) the nature and severity of the impairment; (ii) the duration or expected

---

[5]  A 2003 amendment to the NJLAD statute, replaced the term "handicap" with the term "disability."  The definition of the term as used throughout the statute, however, has remained unchanged.  See N.J. Stat. Ann. § 10:5-5 (West 2004).  Therefore, the broad interpretation of "handicap" by the New Jersey Supreme Court would be applicable to the interpretation of the term "disability." Clowes v. Terminix Int'l, Inc., 538 A.2d 794, 803 (citation omitted).

duration of the impairment; and (iii) the permanent or long term impact of or resulting from the impairment." Id. § 1630.2(j)(2).

A reasonable juror could conclude from the medical record that Ashton's impairment was temporary. In June 2002, Ashton was diagnosed with acute stress disorder and anxiety. Her initial impairment lasted for the months of June and July. Ashton's relapse in September, occasioned by her supervisor's denial of an extension of the teleworking arrangement for that month, rendered her impaired for another month. On October 23, 2002, in an addendum to his June report, Ashton's psychiatrist, Dr. Badaracco, recommended that she not return to work because she was too anxious and her concentration was poor. Ashton's next appointment with Dr. Badaracco was scheduled for November 2. There are no medical reports for the months of November or December 2002; thus, there is no evidence that Ashton was substantially limited in performing a major life activity in November or December 2002, due to her impairment. The record shows that Ashton's impairment was temporary, lasting a total of three months. Even assuming in Ashton's favor that her impairment lasted from June through December 2002, she cannot show that her ability to think was substantially limited on a long-term basis rather than being of limited duration. See McDonald v. Commonwealth of Pa., Dep't Public Welfare, Polk Ctr., 62 F.3d 92, 95 (3d Cir. 1995) (holding that a disability of limited duration is not considered a disability under the ADA). At best, Ashton's impairment appeared to be situational, triggered by her worsening relationship with her supervisor. Moreover, there is nothing in this record to show that Ashton

suffered negative long-term or permanent impact from her impairment. She received mixed performance reviews before she experienced the onset of her symptoms in June 2002. She does not claim, and the record does not show, that her medications produced side affects that negatively impact her ability to think on a long-term basis. Equally as important, Ashton readily acknowledged that she was able to complete her work assignments at home with no problem, indicating that she was not significantly impaired from thinking.

To the extent that Ashton claims that her impairment affected her ability to work, she cannot show that her ability to work is substantially limited if she can work at home but cannot work at the AT&T office because she experiences anxiety and stress related to her supervisor's treatment of her on the job site. See Weiler v. Household Finance Corp., 101 F.3d 519 (7th Cir. 1996). In the "MetLife Behavioral Health Initial Functional Assessment" form she completed in July 2002, Barbara Holton, Ashton's therapist, acknowledged that Ashton's ability to return to work was an index of her wellness. Holton indicated that Ashton could not perform the same job in another department or division of AT&T "due to inherent problems with the customer base and AT&T" but that Ashton could perform the same job at a different company. Nevertheless, she anticipated that Ashton would be well enough to return to work at home in August and that she could return to work in the AT&T office in September. Based on these facts, a reasonable juror could infer that Ashton suffered no significant limitation on ability to work.

Turning to the FMLA retaliation claim, Ashton contended that AT&T retaliated

against her for taking disability leave on September 18, 2002, by terminating her employment. As the District Court correctly stated, we apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Assuming that Ashton satisfied the first two prongs of the McDonnell Douglas test, there is no evidence on this record to show a causal connection between Ashton's decision to take leave in September and her eventual termination. It is undisputed that the restructuring plan was implemented in early October, before Ashton returned from leave, and that Ashton was assigned to a different team at that time. In mid-October, Ashton reminded AT&T that she was taking previously approved vacation leave in the last week of October and would be back at work on November 4, 2002. It was only after Dalina told Ashton to come to work on October 24, that Ashton produced medical notes recommending that she continue teleworking. She reiterated her medical providers' recommendations for teleworking to Michael Klem after he told her to report to the office on November 4. Klem denied Ashton's telework request. Although Ashton was not willing to attend a meeting at the AT&T office to discuss other accommodations, she indicated that she was willing to look for work elsewhere at AT&T. AT&T gave her paid leave for sixty days so that she could look for another in-house position. When she did not find one, her employment was terminated. A reasonable juror could conclude from the undisputed facts in this case that Ashton's termination was causally related to Ashton's insistence on working at home at her current job and her inability to procure another AT&T job, rather than her having taken disability leave. Ashton's claim that AT&T violated the FMLA by

11

failing to notify her of her FMLA rights fails because Ashton has not shown any resulting prejudice. See Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 144 (3d Cir. 2004). There is no evidence in this record demonstrating that, had Ashton been advised of her FMLA rights, she could have returned to work after the twelve week leave without the accommodation of the teleworking privilege. See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 384 (3d Cir. 2002) (holding that the FMLA does not require "an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave").

Accordingly, we will AFFIRM the judgment of the district court. Ashton's motion for leave to file a supplemental appendix is granted. Her motion for sanctions is denied.