**Dr. Beverly LINDSAY, Appellant**

v.

**PENNSYLVANIA STATE UNIVERSITY.**

No. 09–2059.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Feb. 22, 2010.

Opinion filed: March 4, 2010.

Sara A. Austin, Esq., York, PA, for Appellant.

Katherine M. Allen, Esq., John A. Snyder, Esq., McQuaide, Blasko, Schwartz, Fleming & Faulkner, State College, PA, for Pennsylvania State University.

Before: CHAGARES and WEIS, Circuit Judges and RODRIGUEZ *, District Judge.

## OPINION

WEIS, Circuit Judge.

Plaintiff is a professor on the faculty of The Pennsylvania State University. She

---

* The Honorable Joseph Rodriguez, United States District Judge for the District of New Jersey, sitting by designation.

filed suit in September 2006, alleging that the University discriminated against her on the basis of race and gender, failed to accommodate her disability, and condoned a hostile work environment, in violation of Title VII, 42 U.S.C. § 2000e–2; 42 U.S.C. § 1981 *et seq.;* 42 U.S.C. § 12101 *et seq.;* and Title IX, 20 U.S.C. § 1681 *et seq.* She also contended that the University had breached a prior Settlement Agreement. The District Court entered summary judgment for defendant on all claims. After a careful review, we will affirm.

Plaintiff resigned as Dean of the University's Office of International Programs in 2002 and resumed her position as a tenured full professor in the College of Education, agreeing to "perform the normal and customary functions, duties and responsibilities of" that position as assigned by her department head. However, differences arose between plaintiff and her colleagues soon thereafter.

The plaintiff's grievances were numerous and well-documented, as illustrated by the voluminous record. They included claims that her salary increases and opportunities for promotion lagged in comparison to those of her colleagues and that the University failed to adequately and promptly accommodate her requests for an "ergonomically correct" office and first-or business-class air travel. She also alleged that she was not permitted to teach the number or type of courses she requested and was treated disrespectfully by students, colleagues, and administrators alike.[1]

The District Court performed an extensive analysis of the plaintiff's allegations and found no genuine issue of material fact. We exercise plenary review over that determination. *Gardner v. State Farm Fire & Cas. Co.,* 544 F.3d 553, 557 (3d Cir.2008).

The racial and gender discrimination claims were properly analyzed under the test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). We agree with the District Court that plaintiff pointed to no "evidence from which a factfinder could reasonably conclude that the [University's] proffered reasons" for limiting her salary increases—her already substantial salary and comparatively weaker performance— "were fabricated." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994).

As for the allegations regarding classes and course load, the University produced evidence that plaintiff has been able to teach most of the courses she requested and obtained a lighter schedule without securing external funding as required. Again, plaintiff failed to demonstrate that these responses were pretextual.

We also agree with the District Court that the handling of the plaintiff's travel and office furnishings requests was not the result of discriminatory animus. The record shows that the University departed from policy and actually increased the usual travel allowance for the plaintiff's benefit. Likewise, the record reveals that the University made many efforts to accommodate the plaintiff's request for an "ergonomically correct" office, but plaintiff often failed to cooperate.[2]

---

1. Before instituting this suit, plaintiff filed employment discrimination charges with the EEOC in January 2005. In April and October of that same year, she filed complaints with the Pennsylvania Human Relations Commission.

2. Relatedly, we find that the plaintiff's claim under the ADA fails because plaintiff has not demonstrated a medical condition that " 'significantly limit[s] one or more major life activity,' " *i.e.,* " 'those basic activities that the average person in the general population can

■ The District Court was not persuaded that several discrete incidents cited by plaintiff amounted to evidence of a hostile work environment. Nor are we. *See Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 293 (3d Cir.1999) (listing elements of hostile work environment claim, including, *inter alia,* "pervasive and regular" discrimination (citation omitted)). Finally, we agree with the District Court that plaintiff failed to prove that the University breached the Settlement Agreement.[3]

In closing, we note our agreement with the district judge that, on this record, it appears that the University made every effort to accommodate plaintiff. We commend the District Court for its painstaking survey of this case. Finding no reversible error, we will affirm.

perform with little or no difficulty.' " *Marinelli v. City of Erie, Pa.,* 216 F.3d 354, 361 (3d Cir.2000) (quoting 29 C.F.R.App. § 1630.2(i) (1999)).

3. Plaintiff did not raise her argument that the University breached the confidentiality portion of the Agreement until her brief opposing summary judgment. For that reason, the District Court declined to consider that issue or other allegations of race and gender discrimination first raised at the summary judgment stage. We find no fault with the District Court's decision. Allowing plaintiff to effectively amend her complaint so late in the litigation, and after discovery had taken place, would have unfairly prejudiced the University. Even if that were not the case, however, we find no support in the record for these untimely allegations.