Elzey F. JONES, Jr., Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. CIV.A.00–625–SLR.

United States District Court,
D. Delaware.

March 27, 2002.

**592**

Elzey F. Jones, Jr., Seaford, Delaware, pro se.

Colm F. Connolly, United States Attorney and Patricia C. Hannigan, Assistant United States Attorney, United States Attorney's Office, Wilmington, Delaware, for Defendant.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiff Elzey F. Jones, Jr. originally filed this action in Delaware Superior Court on May 30, 2000 against defendant Lance W. Brodeur, alleging violations of the Federal Tort Claims Act, 28 U.S.C.

§ 2671, *et seq.* ("FTCA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701.[1] The case was removed to this court on June 30, 2000. (D.I.1) The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Currently before the court is defendant's motion to dismiss the complaint. (D.I.5, 14) Plaintiff has not filed opposition to the motion. For the following reasons, defendant's motion is granted.

## II. BACKGROUND

Both plaintiff, Elzey F. Jones, and Lance W. Brodeur[2], are civilian employees of the United States Air Force, Dover Air Force Base ("AFB"), Dover, Delaware. (D.I.5) Plaintiff is employed as a Machinist/Welder in the Fabrication Flight, 436th Equipment Maintenance Squadron. (D.I.14, Ex. 2) Brodeur was plaintiff's supervisor from March 1996 to June 30, 1999, the period during which most of the alleged discriminatory actions occurred. (*Id.*)

Plaintiff contends that after he filed an Equal Employment Opportunity complaint with the Dover AFB in 1993 his supervisors retaliated against him and as a result he has suffered physical, emotional and financial hardship. (D.I.5, Ex. 1–3) Plaintiff alleges, in essence, that: 1) he has received disparate treatment; 2) Brodeur prevented plaintiff from acquiring evidence that plaintiff's suspension was unwarranted; and 3) Brodeur "made false statements under oath" that led to plaintiff's suspension. (D.I.1, Ex. B) An amendment to the complaint dated June 7, 2000 further alleges Brodeur singled out plaintiff

1. Plaintiff's complaint and its two "amendments" are not models of clarity. The court understands plaintiff to be asserting these causes of action based on the facts presented.

2. Brodeur was the named defendant when plaintiff filed his complaint in Superior Court. The United States of America filed a substitution of party pursuant to 28 U.S.C. ¶ 2679 (D.I.3), which has been granted by the court.

using unlawful practices such as, "bias in the workplace" and "Supervisor Harassment." (D.I.1, Ex. B) Plaintiff claims he and his family have been placed under surveillance, that Brodeur: "violated [p]laintiff's rights to fair job performances"; made plaintiff perform an unsafe task alone; accused plaintiff of "AWOL"; told a co-worker plaintiff was "going down"; failed to make accommodations for plaintiff's known disabilities; denied plaintiff opportunities for advancement; embarrassed plaintiff by calling him "boy" in front of co-workers and destroyed an aircraft part worth $253,010.53 "without his employer's concerns." (D.I.1, Ex. B) An additional amendment to the complaint, dated June 19, 2000, adds claims that Brodeur: abused his authority by leaving the workplace without authorization; wrote "intimidating and threatening graffiti on plaintiff's personal desk calendar"; "denied plaintiff's suggestions to save the public millions of dollars"; had a listing of missing and damaged items and this did not raise their employer's concerns; did not attend a deposition, falsified documents and obstructed justice. (D.I.5, Ex. 3)

3. Plaintiff's Air Force supervisors included Msgt. Vance G. White in 1991, Sgt. Earl Lancaster and Sgt. Clarence Cole. (D.I.14, Ex. 1(B))

4. Plaintiff's job description includes outfitting the shop tools to machine oversize parts. "These machines often have to be fitted with special supports and fixtures to enable them to machine oversize parts and to hold odd shaped castings" (D.I.14, Ex. 1(C))

Plaintiff asserts that the two witnesses who could have cleared his name, Sgt. Lancaster and Sgt. Cole, were not allowed to testify, and upon appeal of the demotion he was not allowed to introduce new testimony. (Id. at 1(B))

5. Plaintiff's relationship with Brodeur was difficult from the start. Specifically, it appears that plaintiff resented Brodeur's promotion to supervisor after plaintiff had been

## FACTUAL BACKGROUND

Construing the complaint and amendments in the light most favorable to plaintiff yields the following information. Plaintiff began working for the Air Force in 1978 as a reservist. (D.I.14, Ex. 1(B)) In 1978 plaintiff was hired as a machinist, WG–3414–8/10 position, a civilian post at Dover AFB. (Id.) In 1991, plaintiff was hired as a civilian supervisor in the metals technology shop. (Id.) As a civilian supervisor, one of plaintiff's duties was to determine the fate of aircraft parts sent to the shop for inspection or repair. (Id.; D.I. 14, Ex. 1(C)) Plaintiff shared this duty with the other Air Force supervisors in the shop.[3] (Id. at 1(B)) Plaintiff alleges the discrimination and harassment began in 1993 when, on the advice of Supply at Kelly AFB, he and Sgt. Cole condemned parts for a C–5 aircraft. (Id.) The Air Force accused plaintiff of "failure to exercise good judgement" and demoted plaintiff to his current position of Machinist/Welder.[4] (Id.)

After two years, the vacant supervisor position was filled by defendant. (Id.) Plaintiff was Brodeur's supervisor from 1992 until his demotion in 1993.[5] (Id.)

Brodeur's supervisor. (D.I.14, Ex. 1(B), at 53–54) Although not directly quoting plaintiff, Catherine Wolhowe, the investigator of plaintiff's EEO complaint, characterized plaintiff's feelings in the first person, as follows:

I had been his [Brodeur's] supervisor after he started working here in 1992. I gave him his first performance appraisal. I gave him a Fully Successful because his performance had not been above that level. I think he was selected for the supervisory slot because he was the only non-union candidate. He had less than four years of service when he was selected. I had over 20 years of experience. Mr. Garland Dula, another WG–3414–10, had 18 years of service. At the time of his selection, Mr. Brodeur was not even working in the shop. He had been riffed from the shop because of his service date. If he had any known supervisory skills at that time, I don't think

After Brodeur's promotion, plaintiff claims the harsh treatment continued and he was singled out "for harassment, discrimination and retaliation because of my race (Negro), sex (male), handicap (carpal tunnel syndrome) and prior EEO activity." (*Id.* at 54)

In 1997 Brodeur condemned an aftthrust reverser ring, the same part that plaintiff condemned in 1993. (*Id.*) This time plaintiff indicates that Brodeur was not demoted, disciplined or even chastised. (*Id.*) Plaintiff alleges that this disparate treatment occurred because of his race. (*Id.;* D.I. 5, Ex. 1) Plaintiff filed an action with the Dover AFB Equal Employment Opportunity ("EEO") office based on the perceived bias. (D.I.14, Ex. 1(B)) During the 45–day counseling period Brodeur condemned another part, this time without even opening the box. (*Id.*) Plaintiff, after checking to see if the part was, indeed, new, reported the incident to management, allegedly hoping to clear his own name. (*Id.*); (D.I. 5, Ex. 1) Plaintiff claims that management did not correct the situation and then defendant grew furious with plaintiff. (D.I.14, Ex. 1(B))

Plaintiff asserts that following his report to management, Brodeur retaliated by telling Mr. Dula to keep away from plaintiff because he was "going down," and then lowering plaintiff's performance appraisal. (*Id.*) Other acts alleged by plaintiff include putting plaintiff on a letter of requirement for sick leave, looking for ways to write him up and complaining if plaintiff talked

with co-workers during his breaks. (*Id.;* D.I. 5, Ex. 2) Plaintiff made several trips to the EEO office to complain of the treatment and alleges that things would get worse after each trip. (D.I.14, Exs.1(A), (B))

In September of 1998 Brodeur assigned plaintiff to manufacture a cylinder. (D.I.14, Ex. 1(B)) Plaintiff described the job as very complex and dangerous, in particular because he could not use the proper equipment to machine the piece of metal, which weighed thirty pounds. (*Id.*) Plaintiff also alleges that Brodeur disregarded plaintiff's carpal tunnel syndrome and claims Brodeur assigned the job in order to aggravate his condition. (*Id.;* D.I. 5, Ex. 1) When plaintiff finished the cylinder three weeks later his carpal tunnel syndrome was so severe that he had to have surgery. (D.I.14, Ex. 1(B); D.I. 5, Ex. 1) Plaintiff indicates that during his recovery period Brodeur harassed him by calling his home and threatening to report him as absent without leave if he did not report back to work even though plaintiff was on medical leave. (D.I.14, Ex. 1(B); D.I. 5, Ex. 1)

## III.  STANDARD OF REVIEW

Because the parties have referred to matters outside the pleadings, defendant's motion to dismiss shall be treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories,

---

they would have riffed him. Since he took the position, I have seen no documentation that showed he had any supervisory skills before being selected and I have seen no evidence that his non-existent supervisory skills improved during the three years he has been in his position. It is his job to keep the equipment working and safe, but 90 percent of the equipment we use is in need of repair. We have machines which have not been operating for about six years.

This problem has been brought up time and time again with him, but he refuses to do anything about it. I kept the equipment repaired and working. I don't know if he knows what to do to get it repaired. He was not qualified for the supervisory slot and he has not learned how to be a good supervisor while in the slot. I think everyone in the shop will tell you he is not a good supervisor.
(*Id.*)

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). With respect to

summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Revis v. Slocomb Indus.*, 814 F.Supp. 1209, 1215 (D.Del. 1993) (*quoting Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987)).

## IV. DISCUSSION

### A. Federal Tort Claims Act

■ Construing plaintiff's allegations broadly, he seeks to impose liability based on a series of events related to his employment and supervision by Brodeur. To the extent these claims implicate tortious conduct, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. ¶ 2671, mandates that a plaintiff first exhaust his administrative remedies before filing suit. *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first pre-scented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. ¶ 2675(a); *see also Livera v. First National State Bank of New Jersey*, 879 F.2d 1186, 1194 (3d Cir.1989), *cert. denied*, 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 322 (1989).

■ An undisputed affidavit by the officer in charge of processing administrative claims establishes plaintiff[6] failed to pres-

---

**6.** It is clear, however, plaintiff has filed numerous Equal Employment Claims. The out-

come of these filings is not as clear. (D.I.14)

ent a claim before filing suit. "Filing a proper administrative claim is an absolute and unwaivable jurisdictional prerequisite to filing and maintaining an action" under the FTCA. *Dreakward v. Chestnut Hill Hospital*, 427 F.Supp. 177, 179 (E.D.Pa. 1977); *see also Washington v. Curry*, 2002 WL 233192 (D.Del. February 14, 2002). Accordingly, this court lacks jurisdiction to consider any allegations of tortious conduct. *See Bialowas v. United States*, 443 F.2d 1047 (3d Cir.1971); *Cabaniss v. United States*, 2000 WL 369694, *3 (E.D.La. April 10, 2000).

## B. Title VII

■ Plaintiff next seems to suggest that Brodeur's actions constitute discrimination on the basis of race in violation of 42 U.S.C. ¶ 2000e-2 ("Title VII"). Title VII "prohibits discrimination in employment on the basis of race, color, religion, sex or national origin." *Brantley v. Runyon*, 1997 WL 373739, *5 (S.D.Ohio June 19, 1997). The exclusive remedy for claims of discrimination in federal employment is 42 U.S.C.¶ 2000e-16. *Id.* A "federal employee who files a civil action alleging employment discrimination must name the head of the department, agency or unit as defendant." *Id.* The defendant[7] correctly identifies that plaintiff has failed to name the correct defendant-the Secretary of the Air Force. In view of the absence of the correct defendant, this claim[8] under Title VII cannot proceed.

## C. Rehabilitation Act

■ As a final area, plaintiff's allegations regarding a disability based on carpal tunnel syndrome implicate the Rehabilitation Act of 1973 (the "Act"), 28 U.S.C. ¶ 701, which prohibits federal employers from discriminating against persons with disabilities in matters of hiring, placement and advancement. *Shiring v. Runyon*, 90 F.3d 827, 830–31 (3d Cir.1996). Plaintiff filed a claim of disability discrimination with the Equal Employment Opportunity Commission ("EEOC").[9] (D.I.14, Ex. A) For an employee to establish a prima facie case of disability discrimination under the Act, the employee bears the burden of demonstrating: "(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." *Id.* at 831. The definitions and standards established in the Americans with Disabilities Act ("ADA"), 42 U.S.C. ¶ 12111, are applied by courts to evaluate claims under the Rehabilitation Act. *Mengine v. Runyon*, 114 F.3d 415, 420 n. 4 (3d Cir.1997); *see also*, 29 U.S.C. ¶ 791(g).

■ Defendant contends plaintiff's allegations fail because he has not demonstrated that he is disabled by the carpal tunnel syndrome. (D.I.14) The court agrees. To establish the first prong of the

---

7. Defendant also argues the Title VII claims should be dismissed as duplicative as plaintiff proffered the same claims in his three other actions, *Jones v. Peters*, 99–137–SLR; *Jones v. Peters*, 99–535–SLR and *Jones v. Peters*, 99–695–SLR. The relevance of the other cases is negligible since all three have been dismissed without a determination on the merits of the claims.

8. Plaintiff points to incidents where he and Mr. Dula both received the most difficult and

dirtiest jobs that were not given to white employees. (D.I.14, Ex. 1(b)) Even assuming *arguendo* that plaintiff named the correct defendant, the claims still cannot survive summary judgment as plaintiff has not presented any facts or evidence to buttress his generalized complaints that Brodeur's conduct was related to plaintiff's race.

9. The outcome of these EEOC claims is explained by neither defendant nor plaintiff.

Act, plaintiff must demonstrate that he is a qualified individual with a disability. *Cleveland v. Policy Management Systems*, 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). The ADA defines this phrase as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires". *Marinelli v. City of Erie*, 216 F.3d 354, 359 (3d Cir.2000). The Third Circuit has defined disability as

> either (1) a physical or mental impairment that substantially limits one or more of the major life activities of such [an] individual; (2) a record of such impairment; or (3) being regarded as having such an impairment.

*Id.* at 359.

Plaintiff at bar has not presented evidence establishing a disability. His allegations regarding carpal tunnel syndrome as an impairment are not supported by medical evidence or affidavit testimony describing his medical problems or limitations. Although plaintiff contends the carpal tunnel problems hampered his ability to use a particular machine to complete a job, Brodeur avers that the job was completed satisfactorily. (D.I.14, Ex. 2) Brodeur further denies having any knowledge of plaintiff's carpal tunnel syndrome until after the job was completed.

> On 13 October 1998, [plaintiff] presented me with a workers compensation claim form to complete the supervisor's portion. I was surprised to receive the form because [plaintiff] had never advised me of any problem with his wrist and I had not seen [plaintiff] wearing a wrist brace. Up until that time, he had always completed his job assignments in a satisfactory manner.

*Id.*

While it is clear plaintiff did require surgery for carpal tunnel syndrome, he was able to return to work-first "light duty

work" and then "regular duty." *Id.* Plaintiff does not offer any evidence to refute Brodeur's description of his successful return to work responsibilities without incident. Plaintiff has likewise failed to explain whether the carpal tunnel impairs his ability to perform his job or limits any major life activity.

Even assuming *arguendo*, again, that plaintiff has presented some evidence that the carpal tunnel syndrome has limited his ability to perform major life functions such as lifting or working, courts have found no violations of ADA on records reflecting more substantiated or serious impairments. *See e.g., Marinelli*, 216 F.3d 354 (3d Cir.2000) (plaintiff's inability to lift more than ten pounds did not constitute a substantial limitation on major life activity of lifting); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180 (3d Cir.1999) (plaintiff's need to rest during a fifty minute stretch of walking or standing did not constitute a disability); *Kelly v. Drexel University*, 94 F.3d 102 (3d Cir.1996) (plaintiff who could not walk more than one mile without stopping was not disabled).

**CONCLUSION**

For the reasons stated, defendant's motion for summary judgment is granted. An appropriate order shall issue.

**ORDER**

At Wilmington this 27th day of March, 2002, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Defendant's motion to dismiss (D.I.5) is granted.

2. Plaintiff's motion for a three-judge district court to review his case (D.I.28) is denied.

3. The Clerk is directed to enter judgment for defendant and against plaintiff.